# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

SHAUNTAY LATRICE HENDERSON, )
                Petitioner, )
                vs. ) Case No. 13-1237-CV-W-BP-P
STATE OF MISSOURI, )
                Respondent. )

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Shauntay Latrice Henderson, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 16, 2013, seeking to challenge her 2009 convictions and sentences for voluntary manslaughter and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

Petitioner raises three grounds for relief: (1) that trial counsel was ineffective for failing to investigate and call upon a certain witness; (2) that trial counsel was ineffective for failing to explain to petitioner the appeal process; and (3) that trial counsel was ineffective for failing to raise a self-defense argument on behalf of petitioner at trial.

Respondent contends that Ground 1 is meritless and that Grounds 2 and 3 are procedurally defaulted, and alternatively, are meritless as well.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> On September 2, 2006, DeAndre Parker parked a Ford F150 truck in front of the entrance to a gas station and convenience store in Kansas City. Parker went inside the store to purchase cigarettes while his passenger, Miea Bentley, remained outside in the truck. Another vehicle pulled into the gas station and parked by the gas pumps. The driver of that vehicle got out and went inside the store. As Parker came out of the store and got into the truck, a woman, later identified as [petitioner], exited the backseat of the vehicle by the pumps and walked toward the entrance of the store. As [petitioner] passed in front of the truck, she pulled a gun from her waistline, fired five rounds at the truck, and fled the scene. Parker was struck by a bullet and died from his injuries.

Crime scene technicians recovered five shell casings from the scene and located bullet impacts to the truck on the driver's door, driver's rear quarter panel, driver's rear tire, and front passenger tire. A fifth bullet went through the driver's window, through Parker's arm, and into his chest. No firearms were recovered from the scene.

Bentley identified [petitioner's] photo in a police lineup, and [petitioner] was charged with second-degree murder, a violation of Section 565.021, and armed criminal action, a violation of Section 571.015.

During a bench trial, the State presented testimony from Miea Bentley and crime scene investigators. The court admitted into evidence photographs and diagrams of the scene that depict the position of the truck in relation to the entrance of the convenience store and surrounding objects.

[Petitioner] testified and admitted to firing at the truck but claimed to have acted in self-defense. She said she did not know Parker was at the gas station and first noticed him while walking into the store to get a drink. As she passed in front of the truck, Parker's facial expression changed, he put the truck into gear, and he drove toward her. [Petitioner] jumped backwards and thought she was cornered between the outside wall of the store and an ice machine. When parker steered the truck toward her and began to move forward for a second time, [petitioner] believed Parker was either going to run over her or shoot her. She drew the gun and fired wildly at the truck as she ran around the truck and escaped.

[Petitioner] testified she had known Parker for many years. In early 2003, Parker had punched her in the face during an altercation about a go-cart. Parker previously had been shot, and a rumor had circulated that she had been involved in that shooting. In December of 2003, Parker's brother had fired a shotgun at her when she approached the brother to dispel the rumor. In the spring or summer of 2004, Parker had nearly run over her with a car while she was walking through a parking lot. [Petitioner] also testified Parker was known to carry a gun, but she did not see him with a gun at the time of the shooting at the gas station.

At the conclusion of the trial, the circuit court acquitted [petitioner] of second-degree murder and convicted her of the lesser-included offense of voluntary manslaughter, Section 565.023, and armed criminal action. In rejecting [petitioner's] claim of self-defense, the court found as follows:

> Did [petitioner] act in lawful self-defense? Again, based upon what I've heard, the answer to that question is no. Under the law in the State of Missouri, she did not act in lawful self-defense.
>
> [Defense counsel] was right on the definition of self-defense, to an extent. But he left out an important element. The actor, acting in self-defense, must do everything in her power, consistent with her own safety, to avoid danger and

> retreat, if possible. [Petitioner] did not avail herself of those avenues. She had an avenue of retreat.
>
> . . . She mentioned, I think in her testimony, the possibility of seeing a gun or a gun being present or of an insinuation or an assumption that there was a gun on Mr. Parker.
>
> There's absolutely no evidence of that. In her prior contact with Mr. Parker, no gun was mentioned, no gun was used. A fist was used, a car was used, but there's no gun ever used. It simply is an assumption on her part and not even a strong assumption, at that. No tangible evidence or any evidence whatsoever that Mr. Parker had a gun.
>
> So I don't think realistically she was in fear of a gun. I do think she thought that he was driving towards her yet again. I think that's what started this whole ugly scene. She could have escaped. She could have gotten behind that ice machine. She could have run into that [store] or she could have done as she did and just ran away. She is no match. She could have easily out-maneuvered a Ford F150.
>
> So I don't think that she acted in self-defense.
>
> The circuit court sentenced [petitioner] to a ten-year prison term for voluntary manslaughter but suspended execution of the sentence and placed her on probation for five years. The court sentenced her to a three year prison term for armed criminal action.

(Doc. No. 13, Respondents Exhibit E, pp. 1-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

# GROUND 1 – INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground 1, petitioner claims that trial counsel was ineffective for failing to investigate and call upon a certain witness. In the post-conviction proceedings, the Missouri Court of Appeals, Western District, denied Ground 1 as follows:

> In [petitioner's] sole point on appeal, [petitioner] claims she received ineffective assistance of counsel because her trial counsel failed to investigate and call Charles Allen ("Allen") as a witness during trial. [Petitioner] claims Allen would have corroborated her claim of self-defense, and that the failure to call Allen undermines confidence in the outcome of her trial.
>
> To establish ineffective assistance of counsel, [petitioner] must prove by a preponderance of the evidence: "(1) that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) that [petitioner] was thereby prejudiced." Haskett v. State, 152 S.W.3d 906, 909 (Mo. App. W.D. 2005) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). If [petitioner] fails to demonstrate either prong of the Strickland test, her post-conviction motion will be denied. Id.
>
> To establish the performance prong, [petitioner] bears a heavy burden "and must overcome a strong presumption that [her] counsel provided competent assistance." Deck v. State, 68 S.W.3d 418, 425 (Mo. banc 2002). [Petitioner] must demonstrate "'that counsel's representation fell below an objective standard of reasonableness.'" Id. at 426 (quoting Strickland, 466 U.S. at 688). To demonstrate this, Henderson "must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment, and the 'court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). We judge the reasonableness of counsel's conduct based on the facts of each case. Williams v. State, 205 S.W.3d 300, 305 (Mo. App. W.D. 2006).
>
> To establish prejudice, [petitioner] must show that there is a reasonable probability that but for her counsel's ineffectiveness, the result would have been different. Patterson v. State, 110 S.W.3d 896, 900 (Mo. App. W.D. 2003). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (citations omitted). A showing of error that could have a conceivable effect on the outcome is insufficient. Williams, 205 S.W.3d at 305.
>
> Here, [petitioner's] claim of ineffective assistance of counsel is based on her trial counsel's failure to call a witness at trial. To establish ineffective assistance of counsel on this basis, [petitioner] must show that: "(1) [trial] counsel knew or should have known of the existence of the witness, (2) the witness could be located through reasonable investigation,

(3) the witness would testify, and (4) the testimony of the witness would have produced a viable defense." Hays v. State, 360 S.W.3d 304, 309-10 (Mo. App. W.D. 2012). "'The selection of witnesses is a virtually unchallengeable question of trial strategy.'" Id. (quoting State v. Kreutzer, 928 S.W.2d 854, 877 (Mo. banc 1996)). "The decision not to call a witness 'will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise.'" Id. (quoting Hutchinson v. State, 150 S.W.3d 292, 304 (Mo. banc 2004)).

Here, it is uncontested that Allen's existence was known to trial counsel; that trial counsel located Allen in federal prison; that Allen was willing to testify; and that trial counsel had Allen transported from federal prison to the Jackson County jail in preparation for his possible testimony at trial. The dispositive issues, therefore, are whether Allen's testimony would have produced a viable defense and whether the decision not to call Allen to testify was a question of trial strategy.

At the evidentiary hearing on [petitioner's] Rule 29.15 motion, [petitioner] testified that she told trial counsel about Allen and requested that he testify. [Petitioner] stated that she arrived at the gas station with Allen and that he was in the store at the time of the shooting. [Petitioner] argued that Allen could have testified that Parker tried to run her over in his truck and that she had no choice but to open fire. [Petitioner] testified that trial counsel told her that Allen had been transported to Jackson County. [Petitioner] believed trial counsel intended to call Allen to testify. [Petitioner] testified that a week before trial, trial counsel told her that he had decided not to call Allen as a witness. [Petitioner] claimed that she was "kind of" concerned about trial counsel's decision not to call Allen, but chose to rely on his expertise as a trial attorney.

[Petitioner] admitted that she informed the court that she was satisfied with trial counsel's representation at sentencing. [Petitioner] admitted that she did not tell the court that she was unhappy with trial counsel's decision not to call Allen as a witness when the court inquired about trial counsel's representation. [Petitioner] also conceded that because she testified at trial, she had the opportunity to testify about the events on the day of the shooting and about what was going through her mind at the time of the shooting.

Allen testified at the Rule 29.15 motion hearing that he arrived at the gas station with [petitioner]. Allen stated that while he was in the store, he saw Parker trying to hit [petitioner] with his truck. Allen stated that [petitioner] was cornered when she started firing shots at Parker. Allen claimed that he relayed this account of the shooting to [petitioner's] trial counsel prior to trial.

Trial counsel testified that although he had spoken with and transported Allen to Jackson County so that he would be available to testify, he ultimately chose not to call Allen. Trial counsel testified that he did not call Allen as a witness because Allen did not see the shooting. Trial counsel testified that Allen told him he was in the store at the time of the shooting,

that he heard but did not see the shooting, and that he then ran out of the store to rejoin [petitioner] at his vehicle. Trial counsel testified that he came to the conclusion that Allen's testimony was not helpful and that he discussed this conclusion with [petitioner]. Trial counsel stated, "I didn't think that I need[ed] to call [Allen] and I thought it distracted from [petitioner's] story, which I thought was real compelling."

At the close of the evidentiary hearing, [petitioner] argued that Allen's testimony would have bolstered her self-defense claim. In response, the motion court stated:

> I remember this case clearly. I remember trying this case like it was yesterday, because it was a case of such notoriety and it was well-tried by both the prosecution and the defense. I don't mean to sound sensational, but it's kind of seared in my memory. I really do recall this in detail and *I remember the basis for my decision as to voluntary manslaughter.*
>
> Just so you know where I'm coming from, I *think if there had been ten people who had corroborated [petitioner's] testimony, my decision in this case still would have been the same.* I think I even said it in my closing remarks, that while I don't dispute her angst about having the truck come at her and about my ruling about it being a voluntary manslaughter conviction, I thought she was justified in taking the action she took to an extent, but I still think she could have outmaneuvered a Ford F-150 and gotten herself out of harm's way, and it was upon that basis that I didn't give her complete self-defense and ruled as I ruled.

(Emphasis in original).

In fact, the motion court's recollection was accurate. The record from the trial proceedings indicates that the trial court announced the following when it issued its judgment:

> I'm firmly convinced . . . that the physical evidence is more consistent with [petitioner's] recitation of the events more so than Ms. Bentley's . . . . Was it an act of self-defense? Did [petitioner] act in lawful self-defense? Again, based upon what I've heard, the answer to that question is no. . . . The actor, acting in self-defense, must do everything in her power, consistent with her own safety, to avoid danger and retreat, if possible. She did not avail herself of those avenues. She had an avenue of retreat. . . . I do think [petitioner] thought that [Parker] was driving towards her yet again. I think that's what started this whole ugly scene. She could have escaped. She could have gotten behind that ice machine. She could have run into [the store] or she could have done as she did and just ran away. She is no

match. She could have easily out-maneuvered a Ford F-150. . . . So I don't think that she acted in self-defense. But I do think she was scared. I do think she acted in the influence of sudden passion.

In denying Henderson's Rule 29.15 motion, the motion court found:

[Petitioner's] trial counsel testified at the evidentiary hearing that he was aware of Charles Allen and spoke with Charles Allen prior to trial. Charles Allen confirmed in his testimony that he spoke with [petitioner's] trial counsel while Allen was incarcerated in the Federal Bureau of Prisons. Mr. Allen testified that he gave [petitioner's] trial counsel all the information about [petitioner's] case that Mr. Allen knew. [Petitioner] testified that she had talked with trial counsel concerning Mr. Allen's testimony and acknowledged that trial counsel had investigated Mr. Allen's statements. [Petitioner's] claim that trial counsel failed to investigate is unfounded and refuted by the record.

The second part of [petitioner's] amended motion claim is that [petitioner's] trial counsel was ineffective for failing to call Mr. Allen to testify at trial. . . . It is undisputed that trial counsel knew of the existence of Mr. Allen and what his testimony would be. Trial counsel took steps to have Mr. Allen transferred from the custody of the Federal Bureau of Prisons to the Jackson County Detentions [sic] Center so that Mr. Allen would be available if trial counsel felt he was a necessary witness. Trial counsel testified at the evidentiary hearing that after consideration of all the evidence to be presented at trial including the testimony of [petitioner], trial counsel felt it was the best strategy not to call Mr. Allen as a witness. [Petitioner] testified that she consulted with trial counsel regarding Mr. Allen's testimony and she differed [sic] to her attorney's judgment. [Petitioner] in her pro se motion makes the statement regarding her representation: "I feel my attorney has done a great job." [Petitioner's] point is denied.

[Petitioner] has not met her burden to establish that her trial counsel was ineffective for failing to call Allen as a witness at trial. In light of the trial court's belief that [petitioner] failed to pursue available avenues of retreat, even had Allen testified at trial as he did at the Rule 29.15 motion hearing, Allen's testimony would not have produced a viable defense. Moreover, it is clear that the motion court believed trial counsel's testimony that the decision not to call Allen as a witness was based on sound trial strategy. [Petitioner] concedes that trial counsel discussed this decision with her prior to trial. [Petitioner's] trial counsel was not ineffective in failing to call Allen as a witness.

> Moreover, [petitioner] has not met her burden of establishing prejudice. It is evident that Allen's testimony at trial would not have had any bearing on the outcome of [petitioner's] trial.

(Doc. No. 13, Respondent's Exhibit K, pp. 3-9).

In order for petitioner to successfully assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that her attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced her. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

In her post-conviction proceeding, the motion court denied petitioner's claim of ineffective assistance of counsel, finding that: (1) trial counsel did investigate Allen; Allen's own statements to trial counsel were that he did not see the incident and; (2) based on the information available to him at the time, trial counsel's choice not to call Allen was based on reasonable trial strategy. The trial court found that petitioner's actions, as she testified during the trial, did not meet the requirements of lawful self-defense, and therefore, corroborating testimony would not have changed that legal analysis. The court properly applied the Strickland standard.

Because the state courts' determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding[]s" or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"

28 U.S.C. § 2254(d)(1) and (2), Ground 1 will be denied.[2]

## GROUNDS 2 & 3 – PROCEDURAL DEFAULT

Grounds 2 and 3 are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

Petitioner failed to raise Grounds 2 and 3 in her direct appeal or her post-conviction proceedings. (Doc. No. 13, Exhibits E and K). She therefore procedurally defaulted them. Petitioner asserts that she exhausted her state remedies and does not provide further explanation for her default other than to say that her direct appeal counsel raised other issues. (Doc. No. 1, pp. 7, 9). As these grounds concern ineffective assistance of trial counsel, they should have been raised in post-conviction proceedings, not in a direct appeal. In her reply, petitioner states that she failed to raise them in her post-conviction proceedings because of her lack of understanding of the law, but states that her "last two appellate attorneys have helped [petitioner] understand the process a little better and [they] believe[] in her cause." (Doc. No. 20, p. 6). This statement does not provide cause for petitioner's procedural default. Further, in regard to Ground 3, petitioner states that she was not afforded the right to a fair trial or the argument of self-defense because she was prejudiced by the "extremely high publicity of the case." (Doc. No. 20, pp.

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

6-7) This statement also fails to provide cause for petitioner's procedural default.

Grounds 2 and 3 may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider her claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for her procedural default.

Petitioner has failed to show cause for her procedural default. Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for her procedural default, the Court can still reach the merits of her claims if she can show that she is "probably actually innocent" of the crimes for which she was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate her innocence, petitioner must satisfy a two-part test: first, she must support her allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, she must establish "that it is more likely than not that no reasonable juror would have convicted her in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). However, petitioner does not make this showing.

Petitioner has failed to show cause for her procedural default. Nor does she show that a manifest injustice will occur if Grounds 2 and 3 are not reviewed on the merits. Finally, petitioner has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Grounds 2 and 3 is barred, and they will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

          /s/ Beth Phillips_____
         BETH PHILLIPS
         UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: January 23, 2015.